UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTA L. VINSON,<br><br>          Plaintiff,<br><br>v.<br><br>KIRSTJEN NIELSEN, Secretary,<br>Department of Homeland Security,<br><br>          Defendant. | Case No.: 16cv2518<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is Defendant's motion for partial summary judgment. (ECF No. 40).

**I. PROCEDURAL BACKGROUND**

  On October 11, 2016, Plaintiff Roberta L. Vinson initiated this action by filing a complaint. (ECF No. 1). On March 4, 2018, Plaintiff filed a second amended complaint, bringing Title VII claims against Defendant Kirstjen Nielsen, Secretary of the Department of Homeland Security, for discrimination based on sex, sexual harassment, hostile work environment, retaliation, and constructive discharge. (ECF No. 36).

  On May 3, 2018, Defendant filed a motion for partial summary judgment. (ECF No. 40). On May 20, 2018, Plaintiff filed a response in opposition. (ECF No. 41). On June 4,

2018, Defendant filed a reply. (ECF No. 42). On June 8, 2018, Plaintiff filed a surreply. (ECF No. 43).[1]

## II.  FACTUAL BACKGROUND

Plaintiff began working for the Department of Homeland Security, Immigrations and Customs Enforcement (DHS ICE), at the Office of the Chief Counsel (OCC) in San Diego, in March 2010. (ECF No. 41-16 at 11). On April 20, 2011, Plaintiff contacted an Equal Employment Opportunity (EEO) counselor regarding discrimination based on sex and retaliation. (ECF 36-1 at 14). In an attachment to her administrative filing, Plaintiff stated that she was sexually harassed by a coworker, that she reported the harassment, and that her coworkers retaliated against her for reporting. *Id.* at 18. Plaintiff provides a declaration stating that in June 2011, she was moved to the Enforcement Removal Office (ERO), a DHS ICE "division in the same building." (ECF No. 41-20 at 2). On July 1, 2011, Plaintiff made the formal administrative filing regarding the harassment and retaliation. (ECF No. 36-1 at 13).

Plaintiff filed a second administrative filing, dated May 14, 2012, regarding discrimination based on sex and retaliation. (ECF 36-2 at 5–6). In an attachment to the filing, Plaintiff described difficulties with the OCC while she was at the ERO, related to obtaining family medical leave in August 2011, and related to processing her compensation in September 2011. *Id.* at 7.

Plaintiff provides an email from OCC authorities, dated August 16, 2012, informing her of the upcoming retirement of the coworker she reported for sexual harassment. (ECF No. 41-19 at 43). The email informed Plaintiff that she would "return to [her] position in OCC" after the retirement. *Id.* Plaintiff provides a document titled "Retaliation," a chronology of events between August 2010 and April 2015, which appears to be attached

---

[1] The Court issued an order allowing Defendant to file an additional response to the surreply on or before June 22, 2018. (ECF No. 45). The docket reflects that Defendant has not filed any further briefing.

to an April 13, 2015 email to an EEO investigator.[2]  The document states that, after receiving the August 16, 2012 email, Plaintiff objected to returning to the OCC and provided doctor's letters in an effort to demonstrate medical reasons she could not return. (ECF No. 36-6 at 8–9; ECF No. 41-8 at 6–7).  The document states that on October 31, 2012, OCC officials informed Plaintiff she could transfer to the San Francisco OCC office at her own expense by December 1, 2012; otherwise, she was required to return to the San Diego OCC office on November 19, 2012.  *Id.*  The document states that around November 6, 2012, Plaintiff sought and obtained a new job with a lower pay grade, which began on December 3, 2012.  *Id.*  Plaintiff provides an additional chronology document, also an apparent email attachment to an EEO investigator, stating that she "was forced to take 2 w[ee]ks Annual Leave" before her new job started, because her ERO detail terminated on November 16, 2012.  (ECF No. 36-5 at 3).

On March 23, 2015, Plaintiff initiated a third administrative claim, followed by a formal administrative filing on August 5, 2015, regarding discrimination based on sex and retaliation.  (ECF No. 41 at 11; ECF No. 40-9 at 3).  Attached to the filing are thirty-five typed "Items" documenting certain events and related emails.  The described events include: that in "January 2013, [Plaintiff] stated that San Diego [OCC] delayed return of [her] Transit Debit card, causing [her] to incur transit fees ($125/month)"; that in "April 2013, [Plaintiff's] first-line supervisor refused to document [her] personnel file to show that [she] worked for ICE, ERO"; that on January 6, 2015, February 11, 2015, and February 18, 2015, Plaintiff's "first-line supervisor was unresponsive" to requests by "the Department of Justice (DOJ)" and Plaintiff "for a reference sheet and background check . . . for a job [Plaintiff] had been offered by DOJ"; and that Plaintiff "was constructively discharged from ICE in November 2012."  (ECF No. 40-9 at 144, 150, 160, 178–81).

---

[2] For purposes of this motion, the evidence provided by Defendant is consistent with the emails and chronologies provided by Plaintiff.

### III. CONTENTIONS

Defendant seeks summary judgment on Plaintiff's fifth claim, "Title VII Constructive Discharge," on the grounds that "Plaintiff failed to contact an EEO counselor within the 45-day limitation period required by 29 C.F.R. § 1614.105(a)."[3] (ECF No. 40 at 2; ECF No. 42 at 1). Defendant asserts that "Plaintiff has filed three EEO claims related to this case, two before she left DHS and one two years after leaving DHS." (ECF No. 42 at 1). Defendant asserts that "Plaintiff never raised the issue" of constructive discharge in the earlier filings because "at no time . . . did Plaintiff claim—nor did the EEOC nor Defendant understand Plaintiff to be claiming—she was constructively discharged." *Id.* at 1–2. Defendant asserts that Plaintiff's first filing "centered on sexual and retaliatory harassment," and that the second "was limited to issues related to Plaintiff's FMLA requests." *Id.* at 3. Defendant contends that Plaintiff's "alleged constructive discharge is a discrete discriminatory act for which a separate EEO Complaint was necessary." *Id.* at 4.

Plaintiff contends that she exhausted her constructive discharge claim because "[t]he limitations period starts upon the last discriminatory act of the employer." (ECF No. 43 at 1). Plaintiff asserts that she "filed within the 45 day time period" after discovering certain OCC paperwork delays and personnel file inadequacies. (ECF No. 43 at 2). Plaintiff asserts that her timely administrative filing, containing "all acts of harassment and or reprisal which were discriminatory, up to and including the final act that Plaintiff was made aware of," was "filing HS-ICE-23573-2015" dated August 5, 2015. (ECF No. 43 at 2; ECF No. 41 at 11).

---

[3] Defendant initially sought summary judgment on the following claims, in addition to the constructive discharge claim: (1) the portion of Plaintiff's first claim titled "Title VII Discrimination Based on Sex" based on retaliatory harassment by her co-workers, and (2) the portion of Plaintiff's fourth claim titled "Title VII Retaliation" based on the alleged delay or mishandling of her FMLA requests. (ECF No. 40). In the reply, Defendant withdrew the motion on these claims because "Plaintiff appears to have raised questions of fact" in her response. (ECF No. 42 at 5).

Plaintiff contends that "[t]he claim of constructive discharge is NOT a separate discrete act." (ECF No. 43 at 4). Plaintiff asserts that her "[r]equests for transfer began in April/May 2011 - since the date Plaintiff returned from hospitalization after eight months of inaction on the part of OCC supervisors who made Plaintiff continue to work alongside the coworker who sexually assaulted, harassed, bribed, taunted, and tormented Plaintiff." *Id.* Plaintiff asserts that her 2015 administrative filing "request[ed] amendment of the existing, open complaint(s) which were still unresolved, and entirely related," and that "Item 35, regarding constructive discharge included an email" stating, "This is to reiterate my request for a transfer. I thought my request was clear before. My doctor does not want me returning to your office." (ECF No. 41 at 3 (emphases in original)).

## IV. APPLICABLE STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A material fact is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The party moving for summary judgment "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017) (citing *Celotex*, 477 U.S. at 323); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *see also Lannes v. Flowserve U.S., Inc.*, 628 F. App'x 957, 959 (9th Cir. 2015) ("[D]efendants shift[] the burden of demonstrating a material issue of fact by 'pointing out . . . that there

is an absence of evidence to support the [plaintiffs'] case.'") (quoting *Celotex*, 477 U.S. at 325).

Courts must accept the "non-moving party's direct evidence as true, and generally may not disregard direct evidence on the basis that it is implausible or incredible." *Burchett v. Bromps*, 466 F. App'x 605, 606 (9th Cir. 2012) (citation omitted). The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255; *see also Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (noting that "defeat[ing] summary judgment" requires "evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor") (internal quotation omitted). Conclusory allegations, however, are insufficient. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."). Instead, the nonmovant must designate which specific facts show a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

## V. DISCUSSION

A federal employee seeking to sue an employer for discrimination "in violation of Title VII" is required to "first exhaust . . . administrative remedies." *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016). In order to do so, the employee must "'initiate contact' with an Equal Employment Opportunity counselor . . . 'within 45 days of the date of the matter alleged to be discriminatory.'" *Id.* at 1774 (citing 29 C.F.R. § 1614.105(a)(1) (2015)). The "matter alleged to be discriminatory," which starts the 45-day clock, "include[s] the factual basis for [the] claim." *Id.* at 1778–79. The Supreme Court has held that "the limitations-period analysis is always conducted claim by claim," and that the "45–day limitations period begins running on any separate underlying claim of discrimination when that claim accrues." *Id.* at 1782.

When an "employee resigns in the face of" discrimination causing intolerable working conditions, a cause of action under "Title VII treats that resignation as tantamount

to an actual discharge." *Id.* at 1776–77 (quotation omitted). Such a claim, "constructive discharge," "has two basic elements." *Id.* at 1777. First, the employer must have discriminated against the plaintiff "to the point where a reasonable person in [that] position would have felt compelled to resign." *Id.* (citation omitted). Second, a plaintiff "must also show that [the plaintiff] actually resigned." *Id.*

The Supreme Court has explained that the "factual basis" of a constructive discharge claim is different from the factual basis of a claim based only on the employer's discriminatory conduct. *Id.* at 1778–79. A constructive discharge claimant "is not just alleging that the [employer] discriminated against him. He claims that the discrimination left him no choice but to resign." *Id.* at 1779 (characterizing as "no mere dictum" the holding that "constructive discharge is a claim distinct from the underlying discriminatory act" and that "a hostile-work-environment claim is a 'lesser included component' of the '*graver* claim of hostile-environment constructive discharge'"; finding "no reason to excise an employee's resignation from his constructive-discharge claim for purposes of the limitations period") (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004)). The Supreme Court specifically noted,

> [T]he limitations period . . . begin[s] to run for a constructive discharge claim only after a plaintiff resigns. At that point—and not before—[the plaintiff] can file a suit for constructive discharge. So only at that point—and not before—does [the plaintiff] have a 'complete and present' cause of action.

*Id.* at 1777. The employee's "resignation triggers the limitations period for a constructive-discharge claim," so "the 45-day clock for a constructive discharge begins running only after the employee resigns." *Id.* at 1774, 1782.

The issue before the Court is whether Plaintiff sought administrative remedies within the limitations period. Plaintiff's constructive discharge claim accrued on the date she resigned, and her 45-day constructive discharge clock began to run on that date. *See id.* at 1777; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiff states that she began her new job on December 3, 2012. (ECF No. 41-8 at 7; ECF No. 40-9 at

153). The record reflects that her employment with OCC ended either December 1 or 2, 2012. (ECF No. 43-1; ECF No. 36 at 3; ECF No. 40-9 at 2). The one-day difference is immaterial for purposes of resolving this motion—no party asserts Plaintiff left the OCC later than December 3, 2012. Plaintiff was required to seek administrative remedies for her constructive discharge claim within 45 days of leaving the OCC. There is no evidence Plaintiff contacted an EEO counselor, after her resignation, before March 23, 2015. This exceeds the 45-day limitation. Plaintiff did not administratively exhaust her constructive discharge claim.

Although "acts that fall outside the statutory time period" may support a Title VII cause of action "under the continuing violations doctrine," *Scott v. Gino Morena Enterps., LLC*, 888 F.3d 1101, 1112 (9th Cir. 2018), the Court finds that the continuing violations doctrine does not apply in this case. *See Bauer v. Bd. of Supervisors*, 44 F. App'x 194, 198–99 (9th Cir. 2002) (finding plaintiff's allegations that she was "forced to accept a voluntary demotion" were untimely for purposes of her constructive discharge claim, because such allegations were "squarely within the category of discrete discriminatory acts" to which the continuing violations doctrine does not apply, "*even when they are related to acts alleged in timely filed charges*") (emphasis in original) (citing *Morgan*, 536 U.S. at 114). Plaintiff's claim of a constructive discharge that occurred after her previous administrative filings—however related to the allegations in those filings—is not exhausted by those filings for purposes of her Title VII constructive discharge claim. The Court finds Plaintiff did not exhaust her constructive discharge claim. Summary judgment is appropriate as to Plaintiff's constructive discharge claim.

IT IS HEREBY ORDERED that the motion for summary judgment as to the constructive discharge claim (ECF No. 40) is GRANTED and otherwise denied.

Dated: October 29, 2018

Hon. William Q. Hayes
United States District Court